United States District Court
Eastern District of Michigan
Southern Division



United States of America,

        Plaintiff,

                            Case No. 23-20431

v.

                            Hon. David M. Lawson

Houda Bazzi,

        Defendant.

_____/

# Plea Agreement

The United States of America and the defendant, Houda Bazzi, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

## 1. Count of Conviction

The defendant will plead guilty to Count 1 of the Indictment. Count 1 charges the defendant with Conspiracy to Commit Health Card Fraud under 18 U.S.C. § 1349.

## 2. Statutory Minimum and Maximum Penalties

The defendant understands that the counts to which she is pleading guilty carry the following minimum and maximum statutory penalties:

ORIGINAL

| Count 1 | Term of imprisonment: | 10 years |
|---|---|---|
| | Fine: | $250,000, or twice the gain or loss (18 U.S.C. § 3571(d) |
| | Term of supervised release: | 3 years |

## 3.    Agreement to Dismiss Remaining Charges

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will move to dismiss any remaining charges in the indictment against the defendant in this case. Specifically, the United States Attorney's Office will move to dismiss Counts 2-16 of the indictment.

## 4.    Agreement Not to Bring Additional Charges

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will not bring additional charges against the defendant for the conduct reflected in the indictment or factual basis.

## 5.    Elements of Count of Conviction

The elements of Count 1 are:

First, that two or more persons conspired, or agreed, to commit the crime of health care fraud.

Second, that the defendant knowingly and voluntarily joined the conspiracy.

**6.   Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

Beginning in about 2016 or 2017, and continuing through about December 2021, in the Eastern District of Michigan, Houda Bazzi willfully conspired with Samer Youssef, Daoud Faraj, and others, to defraud Medicare and Blue Care Network, health care benefit programs affecting commerce as defined in 18 United States Code § 24(b), of money by means of materially false representations, in connection with the delivery of and payment for prescription medications.

At all relevant times, Samer Youssef was a licensed pharmacist and owner of several business entities, including Somerset Specialty Pharmacy. Houda Bazzi, a pharmacy technician, worked for Youssef's business entities. Faraj was a licensed medical doctor. Also, "specialty" medications are prescription drugs that, for example, treat a less common health condition or have less common characteristics, such as requiring special handling, special administration, or additional monitoring, and

at times can be high-cost medications. "Orphan drugs" are a type of "specialty" medication and are defined in the Orphan Drug Act as one intended to treat, prevent or diagnose a "rare disease or condition." 21 U.S.C. § 360bb(a)(2).

As part of the conspiracy, Samer Youssef and Houda Bazzi identified prescription specialty medications, orphan drugs, and other prescription medications that could be sold at a profit. The prescription medications included, for example, Firazyr, Trikafta, and Augabio. Samer Youssef and Houda Bazzi then worked with Faraj and other doctors to write medically unnecessary prescriptions for the specialty medication or orphan drug.

The doctors, including Faraj, wrote medically unnecessary prescriptions in the names of "patients" who had no medical need for the medications. The "patients" included (1) family and/or friends of Youssef, Bazzi, or Faraj, (2) existing patients of Faraj or other doctors, (3) and Youssef and Bazzi themselves. Youssef, Bazzi, Faraj, and other doctors worked to complete the necessary paperwork and send the medically unnecessary prescriptions to a specialty pharmacy that filled the prescription for the specialty medication or orphan drug. The specialty

pharmacy billed Medicare or BCN to dispense the specialty medication or orphan drug.

In addition to the prescription, the specialty pharmacy required paperwork and other documentation to fill the prescription, documentation that included the patient's name and purported address, purported telephone number, insurance information, and other purported contact information, as well as the prescribing physicians' name, address, telephone number, and other contact information. Youssef, Faraj, and Bazzi conspired to include in that documentation a purported patient address that caused the specialty pharmacy to send the specialty medication or orphan drug to an address controlled by Youssef, Bazzi, or Faraj, rather than to the patient's actual address. Youssef, Faraj, and Bazzi also conspired to include in the documentation submitted to the specialty pharmacy a purported telephone number or other contact information that caused the specialty pharmacy to communicate with Youssef or Bazzi about the prescription, and not communicate with the "patient."

When the specialty medications and orphan drugs arrived, Youssef and Bazzi, via their business entities including SMA Patient Care, LLC,

Somerset Specialty Pharmacy, and Spring Bio Solution, arranged to ship the medications to their customers, who were domestic and international companies. Youssef and Bazzi's business entities sold the medications for millions of dollars.

Youssef and Bazzi paid Faraj and other doctors for their roles in the conspiracy. In executing this scheme, Youssef, Faraj, Bazzi, and other doctors submitted or caused the submission of claims to Medicare and BCN for prescription medications that were not medically necessary. Medicare paid $5,616,327.41 for prescriptions Faraj and other doctors issued as part of this scheme, and BCN paid $26,931.11 for prescriptions Faraj issued as part of this scheme.

## 7.    Advice of Rights

The defendant has read the indictment, has discussed the charges and possible defenses with her attorney, and understands the crimes charged. The defendant understands that, by pleading guilty, she is waiving many important rights, including the following:

A.    The right to plead not guilty and to persist in that plea;

B.    The right to a speedy and public trial by jury;

C.    The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D.     The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E.     The right to confront and cross-examine adverse witnesses at trial;

F.     The right to testify or not to testify at trial, whichever the defendant chooses;

G.     If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

H.     The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

I.     The right to compel the attendance of witnesses at trial.

## 8.     Collateral Consequences of Conviction

The defendant understands that her conviction here may carry additional consequences under federal or state law. The defendant understands that, if she is not a United States citizen, her conviction here may require her to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of her conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands

that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from her conviction.

**9. Defendant's Guideline Range**

**A. Court's Determination**

The Court will determine the defendant's guideline range at sentencing.

**B. Acceptance of Responsibility**

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, her

probation officer; obstructing justice in any way; denying her guilt on the offense to which she is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C.   Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply to the defendant's guideline calculation on Count 1:

- USSG 2B1.1(a)(2): base offense level with 10 year statutory maximum.
- USSG 2B1.1(b)(1)(J): loss amount of $5,663,406.31 (more than $3.5 million and less than $9.5 million).
- USSG 2B1.1(b)(7): convicted of a federal health care offense involving a government health care program with loss of more than $1 million.

The parties have no other joint recommendations as to the defendant's guideline calculation.

### D.    Factual Stipulations for Sentencing Purposes

The parties have no additional factual agreements for sentencing purposes.

### E.    Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 9.B, 9.C, or 9.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F.    Not a Basis to Withdraw

The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if she disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 9.B, 9.C, or 9.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

**10. Imposition of Sentence**

**A. Court's Obligation**

The defendant understands that in determining her sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a) and apply any applicable mandatory minimums.

**B. Imprisonment**

**1. Recommendation**

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment not exceed the midpoint of the defendant's guideline range as determined by the Court.

**2. No Right to Withdraw**

The government's recommendation in paragraph 10.B.1 is not binding on the Court. The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation. If,

however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

## C.   Supervised Release

### 1.   Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a 3-year term of supervised release.

### 2.   No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 10.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

## D.   Fines

The parties have no agreement as to a fine.

### E.    Restitution

The Court must order restitution to every identifiable victim of the defendant's offense. The parties have agreed that restitution is as follows, and shall be joint and several with defendants Samer Youssef and Daoud Faraj:

- Medicare: $5,616,327.41

- Blue Care Network: $26,931.11

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of her financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining her ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within

three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

**F.    Forfeiture**

Pursuant to Fed. R. Crim. P. 32.2, 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), the defendant agrees to forfeit to the United States any and all property, real or personal, which constitutes or is derived from proceeds traceable to the defendant's violation of 18 U.S.C. § 1349, as charged in the Indictment, including but not limited to the following:

- Real property located at 357 12th Avenue, Indian Rocks Beach, Florida 33785

- Three Hundred Fifty-Five Thousand Six Hundred Fifty-Two Dollars and Twenty-Four Cents ($355,652.24) in lieu of real property located at 236 Apex Drive, Pontiac, Michigan 48341

- Three Hundred Sixteen Thousand Eight Hundred Eighty-Nine Dollars and Thirty-One Cents ($316,889.31) in Funds from Flagstar Bank Account No. 143158253, in the name of SMA Patient Care, LLC Wholesaler

- One Hundred Thirteen Thousand Two Hundred Ninety-Two Dollars and Sixty-Two Cents ($113,292.62) in Funds from Flagstar Bank Account No. 118559270, in the name of SMA Patient Care, LLC DBA Somerset Specialty Pharmacy Rochester Hills, LLC

- Grey 2021 Mercedes-Benz E 63; VIN W1KZF8KB6MA932583, Florida Title No. 141957479, License Plate No. QLRP66, registered in the name of Defendant Samer Nabil Youssef and YGZ Enterprises, LLC

- Black 2021 Jeep Wrangler RUBICON; VIN 1C4JJXSJ1MW634145, Florida Title No. 143797097, License Plate No. NYPL65, registered in the name of Defendant Samer Nabil Youssef

- 2022 40' 400 Sport Cruiser, possessing Hull Number SHF40119H122, Florida Title No. 146978808

(the "Subject Property").

The defendant also agrees, pursuant to Fed. R. Crim. P. 32.2, 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, to the entry of a personal forfeiture money judgment against her in favor of the United States in the amount of $11.9 million, which represents the amount of proceeds the defendant obtained or derived, directly or indirectly, from her violation of 18 U.S.C. § 1349. The amount owed by the defendant on the money judgment will be reduced by the final amounts forfeited to the United States.

The defendant agrees that the forfeiture money judgment may be satisfied, to whatever extent possible, from any property owned or

under the control of the defendant. To satisfy the money judgment, the defendant explicitly agrees to the forfeiture of any assets she has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes her rights to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

The defendant agrees to the entry of one or more orders of forfeiture, including a Preliminary Order of Forfeiture, containing the above referenced forfeiture of proceeds and the forfeiture money judgment, upon application by the United States at, or any time before, her sentencing in this case. The defendant agrees to sign such an order, indicating she consents to its entry if requested to do so by the government. The defendant agrees that the forfeiture order will be final and effective as to her upon entry by the Court.

The defendant will cooperate with in the government as requested by the government in connection with the government's efforts to identify, locate, seize, and forfeit property that is subject to forfeiture under this agreement. The defendant agrees that she will cooperate with the United States by taking whatever steps are necessary to deliver possession of, and clear title to, property that is forfeitable to the United

States under this agreement and will execute such legal documents as may be required to transfer title to the United States and by taking whatever steps are necessary to ensure that the property is not sold, disbursed, hidden, wasted or otherwise made unavailable for forfeiture. If any other person or entity has any interest in such property, the defendant will provide the government with the name and address of the person or entity that has an interest in, and/or possession of, the asset, and assist the government in obtaining a release of interest from any such other person or entity.

The defendant waives her right to have a jury determine the forfeitability of her interest in the above identified property as provided by Fed. R. Crim. P. 32.2(b)(5).

The defendant waives the requirements of Fed. R. Crim. P. 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, pronouncement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that she understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise

her of this, pursuant to Fed. R. Crim. P. 11(b)(1)(J), at the time her guilty plea is accepted.

The defendant agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure and/or forfeiture of property covered by this Plea Agreement.

The defendant knowingly, voluntarily, and intelligently waives any statutory and constitutional challenge to the above-described forfeiture including any challenge based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

Upon entry by the Court of an Order of Restitution as part of the Judgment of Conviction in this criminal case and the forfeiture of any specific assets in this case becoming final, the United States Attorney's Office for the Eastern District of Michigan agrees to prepare a Request for Restoration of Forfeited Assets to Known Victim(s). The Request for Restoration will be submitted to the Department of Justice, Criminal Division, Money Laundering and Asset Recovery Section (MLARS) for determination. Defendant acknowledges that no representation has been made to him, however, as to the outcome of such a Request for Restoration, and understands that the MLARS may grant the Request

for Restoration, may grant in-part the Request for Restoration, or may deny the Request for Restoration. Defendant expressly acknowledges that the Request for Restoration may be denied and that no representations have been made to him by or on behalf of the United States Attorney's Office or the Department of Justice as to the likelihood that such a Request will or would be granted.

### G.    Special Assessment

The defendant understands that she will be required to pay a special assessment of $100, due immediately upon sentencing.

## 11.    Appeal Waiver

The defendant waives any right she may have to appeal her conviction on any grounds. The defendant also waives any right she may have to appeal her sentence on any grounds, unless her sentence of imprisonment exceeds the top of the guideline range as determined by the Court.

## 12.    Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief

permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right she may have to challenge her conviction or sentence by collateral review, including, but not limited to, any right she may have to challenge her conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

**13.     Remedies for Withdrawal, Breach, Rejection, or Vacatur**

If the defendant is allowed to withdraw her guilty plea or breaches this agreement, or if the Court rejects this agreement, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the defendant has been permitted to plead guilty to a lesser-included offense, the government may also reinstate any charges or file any additional charges against the defendant for the greater offense, and the defendant waives her double-jeopardy rights with respect to the greater

offense. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives her right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**14.    Use of Withdrawn Guilty Plea**

The defendant agrees that if she is permitted to withdraw her guilty plea for any reason, she waives all of her rights under Federal Rule of Evidence 410, and the government may use her guilty plea, any statement that the defendant made at her guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

**15.    Parties to Plea Agreement**

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

**16.    Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered

Page **21** of **23**

in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

**17.   Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00p.m. on May 1, 2024. The government may withdraw from this agreement at any time before the defendant pleads guilty.

 

Dawn N. Ison
United States Attorney

_____          _____
Mark Chasteen                                                  Andrew J. Lievense
Chief, White Collar Crime Unit                    Assistant United States Attorney
Assistant United States Attorney

Dated: April 29, 2024

By signing below, the defendant and her attorney agree that the defendant has read or been read this entire document, has discussed it with her attorney, and has had a full and complete opportunity to confer with her attorney. The defendant further agrees that she understands this entire document, agrees to its terms, has had all of her questions answered by her attorney, and is satisfied with her attorney's advice and representation.

_____          _____
James C. Thomas                                            Houda Bazzi
Attorney for Defendant                               Defendant
Dated: 5/1/24